John T. Harley, Jr. and Billie C. Harley v. Commissioner.
Harley v. Commissioner
Docket No. 2604-68.
United States Tax Court
T.C. Memo 1969-226; 1969 Tax Ct. Memo LEXIS 68; 28 T.C.M. (CCH) 1186; T.C.M. (RIA) 69226; October 27, 1969. Filed *68 Stephen N. Wittenberg and Fred Gordon, Suite 1440, First Nat'l Bldg; Detroit, Mich., for the petitioners. Patrick R. McKenzie, for the respondent. TIETJENS
Memorandum Findings of Fact and Opinion TIETJENS, Judge: The Commissioner determined a deficiency of $1,824.83 in petitioners' 1964 income tax. We must decide whether petitioner, John T. Harley, Jr., may deduct as a trade or business expense the costs of maintaining and operating a private aircraft during the taxable year. Findings of Fact Some of the facts have been stipulated. The stipulation and the exhibits attached thereto are incorporated herein by this reference. John T. Harley, Jr. (petitioner) and Billie C. Harley, husband and wife, filed their joint income tax return for the calendar year 1964 with the district director of internal revenue, Des Moines, Iowa. At the time they filed their petition herein, their legal residence was in Bloomfield Hills, Michigan. During the entire taxable year 1964 petitioner was employed on a full-time basis as a sales representative by the Fisher Governor Company (Fisher) in Marshalltown, Iowa. Petitioner reported income from Fisher of $17,782.12 for the entire taxable year. The record *69 does not show whether this income was in the form of salary, commissions or some combination of both. As assistant sales manager of the company's Chemical and Refining Division, petitioner's responsibilities included training new sales engineers, promoting sales of Fisher equipment at various places across the country and "trouble shooting," i.e., giving his personal attention to problems experienced by customers with their Fisher equipment. These responsibilities occasionally required petitioner to travel to different points in this country. 1187 In 1964 petitioner owned undeveloped acreage in Oklahoma and Arkansas, including approximately 500 acres in Coal County, Oklahoma, about 175 miles south of Tulsa; another 50 acres on Grand Lake in Delaware County, Oklahoma, about 60 miles east of Tulsa; and approximately 100 acres in Arkansas. Petitioner originally came from Oklahoma and during 1964 he visited his mother who lived in Tulsa. He also owned an aircraft hangar in Tulsa which he leased during 1964. The 500 acres of land in Coal County consisted of timber and pasture land, with income producing potential from pasture leases growing cattle feed, tree farming, pecans, and oil *70 leases. Petitioner considered the best use of this land would be in tree farming. There is no evidence of the value of this land, other than evidence of its general character. A sizable portion of this land was flooded from time to time, making the land unsuitable for any sizable investment in tree farming or in its other potential crops. The petitioner expected that a government reclamation project, which had been planned for this area, would eventually make the land suitable for tree farming, thus causing it to appreciate significantly in value. During 1964 petitioner received $169 for pasture rental of the Coal County property, against which he deducted the following expenses: Posts
$60
Wire
32
Pipe
25
Misc. 20
137
Net income
$ 32
The 50 acres in Delaware County was located on a tributary to Grand Lake. Petitioner believed this property had potential as resort property at some future time and after the tributary had been dredged so that it would become navigable from the lake back to his property. There was also some timber on this property. Petitioner received no income from this property in 1964. Petitioner received an oil royalty of $93.86 in connection with other land he owned in Oklahoma. *71 Petitioner's 100 acres in Arkansas was of similar character as his 500 acres in Coal County, Oklahoma, and was believed by him to have potential for tree farming. Subsequent to 1964 petitioner sold some timber from this land. This land produced no income in 1964. During 1964 petitioner made several trips to Oklahoma and to Arkansas during which he made visits to his properties. The purpose of these visits was to examine the properties, and generally, to look after his interests in them. On August 2, 1964 petitioner purchased a used twin engine Piper Apache, Model PA 23, a five passenger plane including pilot and co-pilot, for $19,000. He had been flying since 1946 and had purchased his first airplane in 1953. Thereafter he owned in succession three other single engine planes, the last of which he sold in October 1963, approximately nine months before he purchased the Piper Apache. During 1964 petitioner made the following plane trips: 1188 Date
Depart
Arrive
Trip Time
Diary - Notes on Trip
8/2
Valparaiso
Marshalltown
3
Trial/purchase flight
8/15
Marshalltown
Columbia, Mo.
1.7
Geo. McDonnold Meeting
8/16
Return to Marshalltown
Vinson Supply - (Okla. City)
8/22
Marshalltown
Rapid City, S.D.
3.3
Sales Promotion - Fisher Gov.Co.
8/22
Rapid City
Helena, Mont.
4.3
Investment Promotion- *J.T.H. Co.
8/23
Helena
Seattle, Wash.
1.9
Investment Promotion- *J.T.H. Co.
8/26
Seattle
Kennewick, Wash.
1.9
Investment Promotion- *J.T.H. Co.
8/26
Kennewick
Seattle
3.4
Investment Promotion- *J.T.H. Co.
8/29
Seattle
San Francisco
2.7
Investment Promotion- *J.T.H. Co.
9/3
San Francisco
Torrance
2
Investment Promotion- *J.T.H. Co.
9/7
Torrance
Long Beach
3.8
Investment Promotion- *J.T.H. Co.
9/8
Long Beach
Farmington,NM.
3.8
Investment Promotion- *J.T.H. Co.
9/8
Farmington
Geneva, Neb.
3.0
Investment Promotion- *J.T.H. C3.
9/9
Return to Marshalltown
2.5
10/11
Marshalltown
Toledo, Ohio
3.0
I.S.A. N.Y.C. - Fisher Gov.
10/11
Toledo
Teterboro, N.J.
3.0
C. King
10/15
Teterboro, N.J.
Harrisburg, Pa.
1.5
Recruitment
10/15
Harrisburg
Teterboro
1.5
Recruitment
10/15
Teterboro
Toledo
3.5
ISA - Return
10/15
Return to Marshalltown
4.0
10/20
Marshalltown
Waterloo & Return
1.5
Radio Repair
11/2
Marshalltown
Olean, N.Y.
4.5
Fisher-Sales promotion
11/2
Olean
Buffalo, N.Y.
1.0
R.M. Newell Co.
11/4
Buffalo
Rochester, N.Y.
1.5
R.M. Newell Co.
11/9
Return to Marshalltown
5.2
11/20
Marshalltown
Tulsa
3.1
Hangar Repair ** -JH Co. * Fisher Sales
11/22
Tulsa
New Orleans
3.0
Fisher Sales Promotion JH Carter
11/25
New Orleans
Tulsa
3.1
Fisher JH Co. * -Hangar Leases **
11/30
Return to Marshalltown
3.0
12/3
Marshalltown
Tulsa
2.7
Galonte Farm - Whiteley
12/6
Return to Marshalltown
3.0
Hangar Leases-J.T.H. Estate *
12/10
Marshalltown
Omaha & Return
3.0
P. Chambers - Signal Oil & Gas
12/11
Marshalltown
Tulsa
3.0
Coalgate (Hudsons) El Dorado, Ark.
12/11
Tulsa
Oklahoma City
.8
Clampit & Yarbrough
12/12
Oklahoma City
Tulsa
.7
Clampit & Yarbrough
12/12
Tulsa-Nerman-Tulsa
2.1
Clampit & Yarbrough
12/13
Return to Marshalltown
3.1
*72 1189 Excepting the trial/purchase flight, the trip to Waterloo for radio repair, and the trips to Tulsa, all petitioner's trips were on Fisher's business itinerary. Accordingly, of the approximately 100 flying hours indicated in petitioner's flight diary, about 75 hours were incurred by petitioner on his Fisher business trip. About 20 hours were incurred by petitioner for trips to Tulsa during which he visited his properties in Oklahoma and neighboring Arkansas. Marshalltown is not served by a commercial airport. The commercial airport nearest to Marshalltown it in Des Moines, Iowa, about 50 miles away. Petitioner's properties in Oklahoma and Arkansas were at some distance from the commercial airports nearest to them. Petitioner regarded the use of his private plane as necessary to conduct his affairs *73 by enabling him more conveniently to visit his properties primarily for two reasons. First, he could take off from Marshalltown and land at private airports near his properties. Second, he did not have to schedule his trips but could leave when his business as sales representative for Fisher allowed. During 1964 petitioner actually landed at the commercial airport in Tulsa on his trips to Oklahoma. Petitioner also regarded the use of his plane as helpful to the performance of his responsibilities as sales representative to Fisher. As sales representative petitioner felt that his use of a private plane gave him personal prestige and lent prestige to his company and its product. Also, petitioner's trip to Olean, New York in 1964 was a "trouble shooting" trip, and petitioner was able to travel to Olean by means of his plane much more quickly than he could have by a regularly scheduled commercial flight. In fact, he left Marshalltown almost immediately after Fisher received a telephone call from a Fisher customer in Olean. Fisher did not require petitioner to use a private plane in 1964. His reimbursement from Fisher was limited to standard commercial airline rates as published for the *74 itinerary required for Fisher business. Petitioner's employment by Fisher in Marshalltown was specifically designed to prepare petitioner to become a manufacturer's representative for Fisher, a position which petitioner presently occupies, representing Fisher in Michigan. Petitioner believes that his advancement to this position was a result of the effective work he did in Marshalltown, in which he feels the use of his private plane was instrumental. Petitioner does not fly for pleasure or recreational purposes, but regards his plane as a vehicle for transportation. Petitioner incurred the following expenses in connection with his maintenance and operation of the Piper Apache during the period August 2, 1964 through December 31, 1964: Gas and oil
$1,249.50
Interest
225.00
Storage
175.00
Insurance
260.00
Repairs, maintenance, inspection
1,015.00
License rating instr
50.00
Iowa Aircraft Use Tax
112.00
Depreciation
4,987.50
$8,074.00
Petitioner claimed 95 percent of such expenses, or $7,670.30, were business related. His actual reimbursements from Fisher in 1964 totaled $927, leaving petitioner with unreimbursed "business" airplane expenses of $6,743.30 which petitioners deducted on their 1964 joint return. *75 In his statutory notice of deficiency the Commissioner disallowed entirely the unreimbursed "business" airplane expenses with the explanation that petitioners had "not established * * * [their] right to this deduction." Due to his disallowance of this expense, the Commissioner made certain automatic adjustments in the computation of petitioners' taxable income: these adjustments depend solely upon our decision of the expense deduction issue. Opinion Section 162, I.R.C. 1954, [1] provides there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including travel expenses while away from home in the pursuit of a trade or business. Petitioner claims that approximately 75 percent of the approximately $8,000 total airplane expenses he incurred during the last five months of 1964, or approximately $6,000, were incurred by him in the carrying on of his trade or business of earning his pay from Fisher. Of this amount Fisher reimbursed $927, equal to the regular commercial airline rates for the same itinerary. It is the unreimbursed expense of approximately $5,000 which is in dispute under section 162. *76 1190 Section 1.162-1(a), Income Tax Regs., provides that the business expenses deductible under section 162 include the "ordinary and necessary expenditures directly connected with or pertaining to the taxpayer's trade or business". The only trade or business petitioner carried on during 1964 was the earning of his pay as a sales representative for Fisher. Clearly the expense was not indispensable to the continuance of petitioner's employment by Fisher. Petitioner contends, nevertheless, that the expense was still sufficiently directly related to his business of earning a wage from Fisher (and advancing to a better position within the company) so as to warrant its deduction from his income taxes. The distinction between business related expenditures which are deductible and those which are not is often a matter of degree, and the distinction is not always easily made. In the present case we have little difficulty, however. In the first place Fisher, while it reimbursed petitioner for his transportation expense at the commercial airline rates, refused to reimburse him for the additional expense. *77 In other words, in the judgment of his employer the additional expense was not considered to have been appropriately incurred. In the second place we are not persuaded that any business advantage whatsoever was obtained by petitioner's use of his own plane. In regards to the additional expense, petitioner was, so to speak, on a lark of his own. We hold petitioner is not entitled to deduct any amount of this expense under section 162. Approximately 20 percent of the claimed expense is allocated to petitioner's trips to Tulsa, Oklahoma and El Dorado, Arkansas for the alleged purpose of visiting his investment properties in those states. The deduction is claimed under section 212 as incurred "for the management, conservation, or maintenance of property held for the production of income." Petitioner's property in Oklahoma and Arkansas appears to have been so held. Additionally, however, the expense must be shown to be "ordinary and necessary." It must be reasonable in amount and must bear a reasonable and proximate relation to the management, conservation or maintenance of such property. Section 1.212-1(d), Income Tax Regs. We do not think that petitioner's visits during 1964 were proximately *78 related to the management, conservation or maintenance of these properties. There is no evidence that petitioner actually did or intended to accomplish anything on these visits. It appears to the contrary that petitioner merely went to look at his property. Indeed we have the distinct feeling that petitioner's visits to Tulsa were personal in nature and that his visits to his properties were merely excursions from Tulsa rather than from Marshalltown. In any event, we hold that no portion of the claimed expense is allowable under section 212. Decision will be entered for the respondent. Footnotes
*. The diary notations for "J.T.H. Co." and "J.H. Co." apparently refer to John T.Harley Co. The notation "J.T.H. Estate" apparently refers to the estate of petitioner's father. ↩
**. Petitioner owned an aircraft hangar in Tulsa, Oklahoma from which he received rentals of $275 during 1964 against the following expenses: Repairs, $18; Land lease $136; Taxes, $125; and Depreciation, $789.75.↩
1. All statutory references are to the Internal Revenue Code of 1954 unless otherwise specified.↩